# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

March 18, 2013

Anthony R. Mignini
Mignini, Raab & Demuth, LLP
429 S. Main Street
Bel Air, MD 21014

Alex S. Gordon
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

Re:  Carol Singleton v. Michael J. Astrue, Commissioner,
     Social Security, Case No. SKG-11-825

Dear Counsel:

Claimant, Carol Singleton, by her attorney, Anthony R.
Mignini, filed this action pursuant to 42 U.S.C. § 405(g)
seeking judicial review of the final decision of the
Commissioner of the Social Security Administration ("the
Commissioner"), who denied her claim for Disability
Insurance Benefits.

Currently pending before the Court are cross motions
for summary judgment, and plaintiff's request for remand in
the alternative.  For the reasons that follow, the Court
hereby DENIES plaintiff's Motion for Summary Judgment,

1

DENIES defendant's motion for summary judgment, and REMANDS the case to the Commissioner for further proceedings consistent with this opinion.

## I.   Procedural History

Ms. Singleton filed an application for Disability Insurance Benefits (DIB) on June 21, 2004, alleging disability beginning June 15, 2004. (R. 22). Ms. Singleton's claim was initially denied on January 7, 2005 and upon reconsideration on March 13, 2006. (R. 73). Thereafter Ms. Singleton had an administrative hearing on July 12, 2007. (R. 57). On July 25, 2007 the ALJ denied Ms. Singleton's claim. (R. 27). Ms. Singleton filed a request for review on September 4, 2007; the claim was remanded on May 16, 2008. (R. 22). The remand instructed the ALJ to obtain an internal medicine consultative evaluation and to "give consideration to the treating and examining source opinions and explain the weight given to each opinion." (Id.). During the appeals process, the claimant filed a subsequent application for a period of disability on February 7, 2008 with an onset date of July 1, 2007. (Id.). This claim was also denied initially and on reconsideration. The ALJ's decision addressed both

2

applications.  The ALJ concluded that Ms. Singleton was not

disabled.  (R. 36).

Ms. Singleton filed this action on January 17, 2012

seeking review of that final decision pursuant to 42 U.S.C.

§ 405(g).

## II.  <u>Factual Background</u>

The Court has reviewed the Commissioner's Statement of

Facts and, finding that it accurately represents the

record, hereby adopts it.  (ECF No. 20-1, 2-8).

## III. <u>ALJ Findings</u>

In reviewing a claimant's eligibility for DIB, an ALJ

must consider all of the evidence in the record and follow

the sequential five-step analysis set forth in the

regulations to determine whether the claimant is disabled

as defined by the Act.  20 C.F.R § 416.920(a).[1]  If the

agency can make a disability determination at any point in

the sequential analysis, it does not review the claim

further.  20 C.F.R. § 404.1520(a)(4).  After proceeding

through each of the required steps, the ALJ in this case

---

[1] Disability is defined in the Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death
or has lasted or can be expected to last for a continuous period of not
less than 12 months."  42 U.S.C. § 416(i)(1)(A).

3

concluded that Ms. Singleton was not disabled as defined by the Act.  (R. 36).

The first step requires the claimant to prove that he or she is not engaged in "substantial gainful activity."[2] 20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in "substantial gainful activity," he or she will not be considered disabled.  Id.  Here, the ALJ found that Ms. Singleton "has not engaged in substantial gainful activity since June 15, 2004, the amended alleged onset date."  (R. 25).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that Ms. Singleton's asthma/chronic obstructive pulmonary

---

[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when she worked before.  20 C.F.R. § 416.972(b).  Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

disease ("COPD"), obesity, depression and anxiety were all
severe impairments.  (R. 25).

At step three, the ALJ considers whether the
claimant's impairments, either individually or in
combination, meet or equal an impairment enumerated in the
"Listing of Impairments" in 20 C.F.R. § 404, Subpart P,
Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If one of the
Listings is met, disability will be found without
consideration of age, education, or work experience.  20
C.F.R. § § 404.1520(d), 416.920(d).  The ALJ here reviewed
listings 3.02 (chronic pulmonary insufficiency), 3.03
(asthma), 12.04 (affective disorder), 12.06 (anxiety-
related disorders) of the Listing of Impairments and
determined that plaintiff did not meet any of the listings.
(R. 27-29).

Before an ALJ advances to the fourth step of the
sequential analysis, she must assess the claimant's
"residual functional capacity" ("RFC"), which is then used
at the fourth and fifth steps.  20 C.F.R. § 404.1520(e).
RFC is an assessment of an individual's ability to do
sustained work-related physical and mental activities in a
work setting on a regular and continuing basis.  Social
Security Ruling (SSR) 96-8p.  The ALJ must consider even

those impairments that are not "severe."  20 C.F.R. §
404.1545(a)(2).

    In determining a claimant's RFC, ALJs evaluate the
claimant's subjective symptoms (e.g., allegations of pain)
using a two-part test.  Craig v. Chater, 76 F.3d 585, 594
(4th Cir. 1996); 20 C.F.R. § 404.1529.  First, the ALJ must
determine whether objective evidence shows the existence of
a medical impairment that could reasonably be expected to
produce the actual alleged symptoms.  20 C.F.R. §
404.1529(b).  Once the claimant makes that threshold
showing, the ALJ must evaluate the extent to which the
symptoms limit the claimant's capacity to work.  20 C.F.R.
§ 404.1529(c)(1).  At this second stage, the ALJ must
consider all the available evidence, including medical
history, objective medical evidence, and statements by the
claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess
the credibility of the claimant's statements, as symptoms
can sometimes manifest at a greater level of severity of
impairment than is shown by solely objective medical
evidence.  SSR 96-7p.  To assess credibility, the ALJ
should consider factors such as the claimant's daily
activities, treatments he has received for his symptoms,
medications, and any other factors contributing to
functional limitations.  Id.

Here, the ALJ determined that Ms. Singleton has the following residual functional capacity: Ms. Singleton can perform light work as defined in 20 C.F.R. 404.1567(b), except that she can never climb a ladder, rope or scaffold; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to temperature extremes, dusts, gases, fumes, poor ventilation and odors; must avoid overhead work; and must be limited to simple, unskilled, low stress work that was not at production pace.  (R. 29-30).

Applying the two-step test for evaluating subjective symptoms, the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (R. 31).

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The ALJ noted that Ms. Singleton's previous work as a medical billing clerk, administrative assistant, day care worker, and medical receptionist, all required skilled or semi-skilled work.

(R. 35).  Thus, the ALJ found that Ms. Singleton is unable
to perform her past relevant work.  (Id.).

    Where, as here, the claimant is unable to resume her
past relevant work, the ALJ proceeds to the fifth and final
step of the sequential analysis.  This step requires
consideration of whether, in light of vocational factors
such as age, education, work experience, and RFC, the
claimant is capable of other work in the national economy.
20 C.F.R. §§ 404.1520(g), 416.920(g).  At this step, the
burden of proof shifts to the agency to establish that the
claimant retains the RFC to engage in an alternative job
which exists in the national economy.  McLain v. Schweiker,
715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano,
617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must prove
both the claimant's capacity to perform the job and that
the job is available.  Grant v. Schweiker, 699 F.2d 189,
191 (4th Cir. 1983).  Before the agency may conclude that
the claimant can perform alternative skilled or semi-
skilled work, it must show that she possesses skills that
are transferable to those alternative positions or that no
such transferable skills are necessary.  McLain, 715 F.2d
at 869.

    In this case, the ALJ found that although Ms.
Singleton was unable to perform any past relevant work,

based on Ms. Singleton's age, education, work experience, and RFC, Ms. Singleton could perform jobs which exist in significant numbers in the national economy.  (R. 35-36). Based on the testimony of the vocational expert, the ALJ determined that Ms. Singleton could work in occupations such as non-postal mail clerk (150,000 jobs nationally and 800 jobs locally); office helper (250,000 jobs nationally and 500 jobs locally); document preparer (375,000 jobs nationally and 900 jobs locally); and addresser (190,000 jobs nationally and 250 locally).  (R. 36).  Thus, the ALJ concluded that Ms. Singleton had not been under a disability, as defined in the Act, from the alleged onset date of September 18, 2008 through the date of denial of the disability application.  (R. 36-37).

## IV.  <u>Standard of Review</u>

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try Ms. Singleton's claim de novo.  <u>King v. Califano</u>, 599 F.2d 597, 598 (4th Cir. 1979). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g),

1383(c)(3); <u>Craig</u>, 76 F.3d at 589; <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. <u>Craig</u>, 76 F.3d at 589; <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them.  <u>Underwood v. Ribicoff</u>, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman</u>, 829 F.2d at 517.  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or

without remanding the case for a rehearing." <u>Melkonyan v.</u>
<u>Sullivan</u>, 501 U.S. 89, 98 (1991).

## V.   <u>Discussion</u>

The plaintiff makes several arguments.  (ECF No. 12-
1). Because the Court finds that the first argument
examined is meritorious and compels a remand, the Court
need not reach her other arguments.

Plaintiff first argues that the ALJ failed to properly
consider all of the medical opinions on the record.
Specifically, plaintiff argues that while the ALJ
considered and placed significant weight on the revised
opinion of state agency physician, Dr. Hakkarinen, she did
not properly consider, or even mention, the opinions of
state agency physicians, Dr. Swami and Dr. Albright.  (ECF
No. 12-1, 17-19).  Plaintiff argues that the "ALJ's failure
to recognize and address the conflicting opinions by state
agency medical consultants in this case warrants remand and
reversal of her opinion."  (<u>Id.</u> at 19).

Defendant responds that the ALJ properly considered
the opinions of Drs. Swami and Albright when she cited to
them as part of her discussion of Dr. Hakkarinen's opinion.
(ECF No. 20-1, 16-17).  Because the ALJ "recognized that
these opinions were part of the discussion that prompted

11

Dr. Hakkarinen to change his initial opinion," defendant argues, the ALJ did not fail to recognize or discuss the conflicting findings.  (Id. at 17).

Alternatively, defendant argues that if the ALJ erred, the error was harmless.  Specifically, defendant argues that plaintiff could at least perform sedentary work, and therefore was not disabled.  (Id. at 19).  Defendant cites extensively to the record to support its conclusion that "any error the ALJ might have committed in evaluating the opinions of the State agency and other program physicians did not affect the outcome of the proceedings."  (Id.).

An ALJ's RFC "must always consider and address medical source opinions."  SSR 96-8p, 1996 SSR LEXIS 5 at *20 (1996 WL 374184 *7 (S.S.A); see also Chapman v. Comm'r, 2012 U.S. Dist. LEXIS 180801, 5-6 (D. Md. Dec. 21, 2012)(remanding where ALJ "did not even note" a medical report in his opinion).  In addition, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p; Johnson v. Astrue, 2012 U.S. Dist. LEXIS 55823 (D. Md. Apr. 20, 2012).  As such, where an ALJ does not address a medical source opinion, the reviewing court "has no way of knowing whether the ALJ properly considered this evidence," and remand is appropriate.  Knight v. Astrue, 2011 U.S.

Dist. LEXIS 34983 (D. Md. 2011).  This holds particularly
true, as per SSR 96-8p, for medical source opinions that
conflict with the ALJ's RFC assessment.

Several state agency consultants expressed opinions on
Ms. Singleton's functional capacity.  Two initial
assessments were conflicting.  In an April 2, 2008,
physical residual capacity assessment, Dr. Hakkarinen found
that plaintiff could stand and or walk for <u>less than</u> 2
hours in an 8-hour work day and sit for about 6 hours in a
workday.  (R. 712) (emphasis added).  Dr. Hakkarinen notes
in his comments that a disability onset date of July 2007
"is credible." (R. 718).  In contrast, a May 8, 2008,
analysis by Dr. Singh found that Ms. Singleton could stand
and walk for 4 hours and sit for 6 hours in a regular work-
day.  (R. 739).  Dr. Singh based this finding primarily on
plaintiff's account of her daily activities.  (<u>Id.</u>).

On May 27, 2008, Dr. Kumar Swami reviewed Dr.
Hakkarinen's April 2 assessment.  (R. 746).  He noted that
the DDS had proposed a medical vocational allowance with a
7/26/07 onset date.  (<u>Id.</u>).  Dr. Swami found that Dr.
Hakkarinen's report was "programmatically reasonable," as
was the estimated onset date.  (<u>Id.</u>).  On May 29, 2008, Dr.
Albright also reviewed Dr. Hakkarinen's report.  Dr.
Albright noted that "Dr. Hakkarinen believed that the

13

combined effects of obesity and asthma/COPD supported the
claimant's ADL restrictions, per SSR 96-7p, thus limiting
the claimant to less than a full range of sedentary work."
(R. 747).  He concluded that "I think our RFC is consistent
with the evidence, as did Dr. Swami." (Id.).  Dr. Albright
disagreed with Dr. Singh's analysis that plaintiff could
perform light activity, noting that while plaintiff could
perform household chores, "the issue really is the
claimant's ability to sustain these activities. It appears
that she does require breaks and assistance from her
husband to accomplish these." (Id.).

Finally, on June 6, 2008, Dr. Hakkarinen revised his
function capacity assessment, finding that claimant could
in fact stand and/or walk for at least two hours in a work-
day, and sit for about 6 hours in a eight hour workday.
(R. 748A) (emphasis added).  Unlike his earlier assessment
(the ability to stand and/or walk for less than two hours),
this conclusion suggests that plaintiff was not disabled.
The record does not contain any review of this revised
assessment by Dr. Albright or Dr. Swami or any different
opinion on their part.  Neither the ALJ nor the Court can
assume that these reviewing doctors would change their
opinions to conform with Dr. Hakkarinen's new, revised view
of plaintiff's functional capacity.

14

The ALJ began her analysis of the various conclusions of the state agency consultants by stating that "State agency consultants limited the claimant to a reduced range of light work[3] with sedentary sitting, standing, and walking limitations, postural limitations and environmental limitations." (R. 33).  In support, the ALJ cites only to the revised opinion of Dr. Hakkarinen, noting that while Dr. Harkkarinen initially limited claimant to a reduced range of sedentary work, "additional evidence led him to change his opinion to a reduced range of light work with sedentary sitting, standing, and walking limitations." (Id.).  The ALJ cites to various exhibits, including the reports of Dr. Swami and Dr. Albright, in support of this conclusion.  (Id.).

The ALJ erred in her analysis of the medical evidence on record.  The introductory sentence suggests that State agency medical examiners were in agreement that plaintiff was limited to a reduced range of light work.  As is

---

[3] The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs.  The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs.  Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, 1983-1991 Soc.Sec.Rep.Serv. 24 (S.S.A 1983).

documented supra, however, it is clear from the record that there was substantial disagreement among the examiners. While Dr. Hakkarinen eventually concluded that plaintiff was capable of a reduced range of light work, Dr. Swami found that Dr. Hakkarinen's initial conclusion—that plaintiff was capable of less than sedentary work—was correct. (R. 740, 745-746). In addition, Dr. Albright concluded that the initial disability conclusion was "consistent with the evidence." (R. 747). As such, there was substantial disagreement among the State examiners as to the extent of plaintiff's capabilities.

The ALJ's citations to the reports of Dr. Swami and Dr. Albright are insufficient to remedy the error. Indeed, the citations suggest that the ALJ misunderstood the nature of the doctors' opinions. The ALJ cites to these opinions as part of the "additional evidence" that led Dr. Hakkarinen to change his opinion. (R. 33). Yet these opinions supported Dr. Hakkarinen's initial conclusion that plaintiff was entitled to medical-vocational allowance. As such, they could not have been part of the evidence that led Dr. Hakkarinen to revise his opinion. The citation suggests that the ALJ misread the record and believed that these reports were in agreement with the final conclusion of Dr. Hakkarinen.

This error was not inconsequential.  The opinions of Dr. Swami and Dr. Albright directly conflict with the ALJ's RFC.  As such, the ALJ had an obligation to, at the least, detail the reasons why the medical opinions were afforded little or no weight.  Without an explanation or even acknowledgement of these contrary opinions, the Court cannot determine if the ALJ's RFC was supported by substantial evidence.[4]  This failure was especially crucial, in light of the fact that both of plaintiff's treaters – Drs. Parey and Aaron – had opined the plaintiff's RFC was less than sedentary.  (R. 390–91; 787–93).  The Court directs the ALJ to weigh, consider and reconcile all these opinions on remand.

## VI.  Conclusion

For the reasons set forth above, The Court DENIES plaintiff's motion for summary judgment (ECF No. 16-1), DENIES defendant's motion for summary judgment (ECF No. 20-

---

[4] While defendant emphasizes evidence suggesting that Ms. Singleton was capable of at least sedentary work, it is neither its task nor the Court's to supply an alternative basis for the ALJ's conclusion. "[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision." Steele v. Barnhart, 290 F.3d 936 (7th Cir. 2002); Ledbetter v. Astrue, 2011 U.S. Dist. LEXIS 38351 (D.S.C. 2011).  The ALJ, and not defendant's lawyers, must "build an accurate and logical bridge from the evidence to her conclusion." Id.

1), and REMANDS the case to the Commissioner for further

proceedings consistent with this opinion.


Date:  3/18/13                          /s/
                                  Susan K. Gauvey
                                  United States Magistrate Judge